**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Nephi S. Oliva,<br><br>Plaintiff<br>v.<br><br>Las Vegas Metropolitan Police Department, et al.,<br><br>Defendants | Case No.: 2:25-cv-00283-JAD-MDC<br><br>**Order Granting Motion to Dismiss, Denying Motion for Surreply, Dismissing Claims against the NVSCA, and Closing Case**<br><br>[ECF Nos. 28, 34] |

The Las Vegas Metropolitan Police Department (Metro) revoked Plaintiff Nephi S. Oliva's license to teach concealed-carry firearm courses because his course used simulated, not live, ammunition in violation of Metro's requirements. Oliva alleges that Metro infringed on his Fourteenth Amendment procedural-due-process rights by delegating the authority to create firearm-course standards to the Nevada Sheriff's & Chief's Association (NVSCA). He also alleges that both Metro and the NVSCA denied him an in-person hearing with legal representation to appeal the license revocation.

Because Nevada Revised Statute (NRS) 202.3657 requires firearm courses to meet the standards established by the NVSCA, Oliva's first procedural-due-process theory fails. And because Metro sent him notice of its license-revocation determination and he appealed the decision, his second due-process theory also fails. I thus grant Metro's motion to dismiss and sua sponte dismiss Oliva's claims against the NVSCA because his claims against it fail for the same reasons that they fail against Metro. I also deny Oliva's motion for leave to file a surreply because Metro's reply contains no new arguments or evidence that merit another response from

Oliva. And because granting leave to amend would not cure these fatal defects, I dismiss Oliva's complaint in its entirety and without leave to amend and close this case.

**Background**

The NVSCA is a nonprofit organization that helps Nevada police departments develop training standards for firearm-instruction courses.[1] Police departments like Metro adopt and enforce the NVSCA's standards.[2] Oliva taught concealed-carry firearm courses regulated by Metro and the NVSCA through his business, Vegas CCW.[3] Four years ago, Oliva began using non-lethal ammunition in his CCW classes because a student injured another student by negligently discharging his gun.[4] A year and a half later, Metro adopted new NVSCA training standards that required instructors to use lethal ammunition in their courses and because CCW didn't comply, it revoked Oliva's teaching license.[5] Metro briefly reinstated Oliva's license, but less than a month later, the Churchill County Sherriff's Department (CCSD) revoked it again and denied his appeal.[6] He alleges that when he appealed its revocation decision, Metro did not give him an in-person hearing or the opportunity to appear with legal representation.[7]

---

[1] *See* ECF No. 3 at ¶ 72.

[2] *Id.* at ¶¶ 23, 73.

[3] *Id.* at ¶ 69.

[4] *Id.* at ¶¶ 19–20.

[5] *Id.* at ¶¶ 21–23, 73–74.

[6] *Id.* at ¶¶ 24–28, 78–79. I do not address Oliva's claim against the CCSD in which he alleged that the sheriff's office was acting through the NVSCA when it revoked his license because I dismissed all of his CCSD claims for failure to allege a procedural-due-process violation. *See id.* at ¶¶ 78–80 (alleging that the sheriff's office sent a letter "from [the] NVSCA," that the letter "cited a unanimous vote by [the] NVSCA," and that it gave "the impression of official law-enforcement authority") (cleaned up); ECF No. 6 (adopting report and recommendation to dismiss Olvia's claims against the sheriff's office and Undersheriff Orozco).

[7] ECF No. 3 at ¶ 24.

Oliva sued the CCSD, Sergeant Aaron Fink, Undersheriff Lee Orozco, Metro, and the NVSCA, alleging that the adoption of NVSCA standards and the organization's involvement with the revocation decision violate his due-process rights.[8] He also alleges that the lack of an in-person hearing and opportunity for legal representation violates his Fourteenth Amendment rights.[9] I adopted the magistrate judge's report and recommendation to dismiss Oliva's Fourteenth Amendment claim against the CCSD and the two police officers because he failed to allege that they violated his procedural-due-process rights.[10] I also dismissed his negligent-training-and-supervision claim against the CCSD because without an underlying constitutional violation, he had no basis for that claim.[11] Only Oliva's Fourteenth Amendment claims against Metro and the NVSCA remain.

**Analysis**

Federal pleading standards require a plaintiff's complaint to include enough factual detail to "state a claim to relief that is plausible on its face."[12] This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation";[13] plaintiffs must make direct or inferential factual allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[14] A complaint that fails to meet this standard must be dismissed.[15] But

---

[8] *Id.* at ¶ 87.

[9] *Id.*

[10] ECF No. 6 at 4. Oliva's Fifth Amendment procedural-due-process claim against all defendants was dismissed with prejudice because he did not sue the federal government. *Id.*

[11] *Id.*

[12] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[14] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

[15] *Id.* at 570.

federal courts must also interpret all pleadings "so as to do justice."[16] And the Supreme Court has consistently held that pro se pleadings are "to be liberally construed."[17] So a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[18] If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment.[19]

Metro moves to dismiss Oliva's claims under Federal Rule of Civil Procedure (FRCP) 12(b)(6). It argues that Oliva's 42 U.S.C. § 1983 claim fails because he only identifies one civil-rights violation and therefore doesn't allege an unconstitutional custom or practice as required by *Monell v. Department of Social Services*.[20] Metro also argues that its adoption of the NVSCA's training standards did not violate Oliva's due-process rights because NRS 202.3657 delegates the authority to create firearm-training standards to the NVSCA and requires Metro to implement those standards when issuing licenses.[21] It concludes that Oliva was not denied his

---

[16] Fed. R. Civ. P. 8(e).

[17] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted).

[18] *Id.* (cleaned up).

[19] *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

[20] *See* ECF No. 28 at 3–5 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[T]he language of § 1983 . . . compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.")).

[21] *Id.* at 8–9; *see* ECF No. 28-1 (Nevada concealed-handgun training standards created by the NVSCA).

procedural-due-process rights because he received notice and appealed the revocation decision; he does not have a constitutional right to appear in person or with legal representation.[22]

Oliva pivots to a new liability theory in response. He argues that Nevada's concealed-firearms statute authorizes only the Department of Public Safety (DPS) to establish and implement training standards and revoke his teaching license.[23] He contends that Metro violated his due-process rights because it did not have statutory authority to adopt the NVSCA's live-ammunition requirement and revoke his license.[24] He also argues that because the instructor-approval scheme itself is unconstitutional, he satisfies *Monell*'s requirement that a § 1983 plaintiff must allege more than a single constitutional violation.[25] He maintains that Metro allowed him to file only a written appeal, which violates his procedural-due-process rights.[26]

### A. Oliva fails to state a Fourteenth Amendment procedural-due-process claim.

"A procedural-due-process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."[27] Oliva alleges that Metro deprived him of his property interest in his firearm-instructor license.[28] And he alleges that Metro denied him adequate procedural protections

---

[22] ECF No. 28 at 6.

[23] ECF No. 30 at ¶¶ 2, 11.

[24] *Id.* at ¶¶ 12, 14–15.

[25] *Id.* at ¶¶ 29–30.

[26] *Id.* at ¶¶ 33–35.

[27] *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998) (cleaned up).

[28] *See* ECF No. 3 at ¶ 87; ECF No. 31 at 9; *Greenwood v. F.A.A.*, 28 F.3d 971, 975 (9th Cir. 1994) (finding that any action suspending a license must include proper procedural-due-process protections).

because it unlawfully delegated the authority to set firearm-course standards to the NVSCA and revoked his license without an in-person hearing at which he could appear with counsel.[29]

***1. NRS 202.3657 authorizes the NVSCA to create firearm-training standards and requires Metro to implement those standards.***

Nevada law requires an individual applying for a concealed-carry permit to complete a firearm-safety course approved by the sheriff or offered by a federal, state, or local law-enforcement agency or similar organization.[30] The course must teach applicants to properly use guns and follow Nevada's firearm laws.[31] A course approved by the sheriff must meet "any standards" established by the NVSCA.[32]

Metro issued Oliva a firearms-instructor license in September 2020 but revoked the license three years later because his course failed to comply with the NVCSA's new live-ammunition standards.[33] In his claim against Metro, Oliva alleges that the department, not the NVSCA, revoked his license.[34] So his allegation that NRS 202.3657 "does not grant [the] NVSCA authority to approve, deny, or revoke instructor licenses" is not applicable; his only claim is that the NVSCA should not have the authority to set licensing standards.[35] But this liability theory fails under NRS 202.3657, which requires the NVSCA to create standards for concealed-carry courses and Metro to revoke teaching licenses if a course fails to meet the

[29] ECF No. 3 at ¶ 87.

[30] Nev. Rev. Stat. § 202.3657(3)(c).

[31] *Id.*

[32] *Id.*

[33] ECF No. 3 at ¶¶ 18, 21, 24.

[34] *Id.* at ¶¶ 73–74, 78 ("Plaintiff received a letter from Sergeant Aaron Fink of Metro, revoking his instructor's license on the grounds of non-compliance with NVSCA standards.").

[35] *Id.* at ¶¶ 87, 101.

NVSCA's updated standards. So Oliva fails to state a claim for relief because he does not allege that Metro improperly delegated its authority in violation of his due-process rights.

In deciding a motion to dismiss, courts may only consider allegations in the complaint, exhibits attached to the complaint, and information incorporated by reference when determining the pleading's sufficiency.[36] So I do not need to consider Oliva's new theory that only DPS can regulate firearm-course licenses. But even if I were to consider it, the statutes that Oliva cites fail to support his theory. NRS 202.3653 and 202.369 permit, but do not require, DPS to adopt regulations implementing Nevada's concealed-firearms statute.[37] Nothing in the statute gives DPS exclusive enforcement authority over concealed-carry instructor licenses. If it did, then the Nevada legislature would have contradicted itself by passing NRS 202.3657, which requires sheriffs to implement the NVSCA's standards for concealed-carry courses. Oliva acknowledges this in his amended complaint, in which he alleges that Metro has jurisdiction under NRS 280.105 and 202.3657 to "license and regulate instructors for concealed-weapons permits."[38] I thus find that he fails to state a claim for relief based on either of his improper-delegation theories.

---

[36] *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899–900 (9th Cir. 2007); *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

[37] *See* ECF No. 31 at 6.

[38] *Id.* (cleaned up).

### *2. Metro did not violate Oliva's procedural-due-process rights because it provided notice and an opportunity to be heard.*

Procedural due process requires notice and an opportunity to be heard.[39] An opportunity to be heard does not necessarily require the chance to present an argument in person.[40] And the Fourteenth Amendment right to due process does not guarantee legal representation in civil matters.[41] Procedural due process is a "flexible concept" that can vary based on each plaintiff's situation.[42]

Oliva alleges that he received notice from Metro and the CCSD that they intended to revoke his teaching license.[43] He appealed both revocations.[44] He states that he "was denied the opportunity to appear in person or have legal representation during the appeal process,"[45] but neither procedure is required by the Fourteenth Amendment's procedural-due-process protections. I do not find that Metro needed to provide anything more than the "touchstone" of procedural due process: notice and an opportunity to be heard.[46] Metro thus gave Oliva sufficient process before it revoked his teaching license, so I grant its motion to dismiss on this theory as well.[47]

---

[39] *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1225 (9th Cir. 2021).

[40] *Partington v. Gedan*, 961 F.2d 852, 865 (9th Cir. 1992) ("An opportunity to be heard, however, does not necessarily include an opportunity to present one's arguments orally.").

[41] *See Hedges v. Resol. Tr. Corp.*, 32 F.3d 1360, 1363 (9th Cir. 1994).

[42] *Miranda*, 15 F.4th at 1225 (quoting *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017)).

[43] ECF No. 3 at ¶¶ 74, 79.

[44] *Id.* at ¶¶ 75, 80.

[45] *Id.* at ¶ 80.

[46] *Miranda*, 15 F.4th at 1225.

[47] I do not address the parties' *Monell* arguments because none of Oliva's theories states an underlying constitutional violation. *See Long v. City & Cnty. of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007) ("If no constitutional violation occurred, the municipality cannot be held

**B. Because Metro didn't raise any new arguments or evidence in its reply, Oliva's motion for leave to file a surreply is denied.**

Oliva's request to file a surreply is denied because a surreply is not merited here. This court's local rules warn litigants that "motions for leave to file a surreply are discouraged."[48] While surreplies may be permitted if the movant raises new arguments or evidence in a reply brief, Oliva misunderstands the scope of what is meant by "new." Replies are not limited to merely regurgitating the points and authorities from the motion. New arguments are permitted—indeed expected—in a reply if they are responsive to points or authorities raised in the response brief. It is only the arguments that lack a relationship to something raised in the response brief that might justify expanding the briefing. Having reviewed the briefing in this case, I find that Metro's reply brief[49] does not improperly raise brand new arguments; rather, its "new" points and authorities are directly responsive to Oliva's opposition brief.[50]

**C. The NVSCA and Metro are similarly situated, so I also dismiss Oliva's claim against the NVSCA.**

Courts can dismiss a claim sua sponte under FRCP 12(b)(6) if the plaintiff "cannot possibly win relief" on his claim.[51] If all defendants are in a similar position or plaintiff's claims

liable[.]" (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986))); *Lockett v. Cty. of L.A.*, 977 F.3d 737, 742 (9th Cir. 2020) (finding that a *Monell* claim cannot survive without underlying constitutional violation).

[48] L.R. 7-2(b).

[49] ECF No. 31.

[50] ECF No. 30.

[51] *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987).

against both defendants are intertwined, the court can analyze whether the plaintiff states a claim against a nonmoving defendant as well.[52]

Oliva asserts both of his Fourteenth Amendment theories—improper delegation and denial of his process rights—against the NVSCA.[53] Because the plain language of NRS 202.3657 gives the NVSCA the authority to establish firearm-training standards, Oliva's first due-process theory against it fails as a matter of law. And because neither an in-person hearing nor an opportunity for legal representation are required by the Fourteenth Amendment, Oliva's second theory against the NVSCA also fails. So I dismiss Oliva's claims against the NVSCA too because they fail for the very same reasons that his claims against moving defendant Metro are not viable.

**D. Oliva doesn't seek leave to amend, and granting it would be futile.**

Oliva does not seek leave to amend his complaint to cure the deficiencies that Metro identified in its motion to dismiss. But because courts must construe pro se pleadings liberally and must give leave to amend when justice so requires,[54] I consider whether leave to amend is warranted here. The Ninth Circuit has made it clear that leave to amend should be denied if a complaint's defects cannot be cured and further amendment would be futile.[55]

I find that the claim defects identified in this order cannot be cured by any further amendment. The facts alleged in Oliva's amended complaint support only the findings that

---

[52] *Silverton v. Dep't of Treasury of U.S. of Am.*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related.").

[53] *See* ECF No. 3 at ¶ 87.

[54] Fed. R. Civ. P. 15(a)(2).

[55] *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018).

Nevada delegated authority to create firearm-course standards to the NVSCA, Metro properly implemented the NVSCA's new standards, and Metro gave Oliva notice and an opportunity to be heard, as required by the Fourteenth Amendment, after it revoked his license. Oliva has not identified any facts, either in his complaint or in his response to the dismissal motion, that would suggest that he is able to overcome those legal bars. So because amendment would be futile, I dismiss Oliva's complaint without leave to amend and I close this case.

## Conclusion

Because Nephi S. Oliva fails to state a claim for relief against any defendant, IT IS ORDERED that Las Vegas Metropolitan Police Department's motion to dismiss **[ECF No. 28] is GRANTED**. IT IS FURTHER ORDERED that his claims against the Nevada Sheriff's & Chief's Association are dismissed for the same reasons.

IT IS FURTHER ORDERED that Oliva's motion for leave to file a surreply **[ECF No. 34] is DENIED**.

**The Clerk of Court is directed to CLOSE THIS CASE**.

U.S. District Judge Jennifer A. Dorsey
October 15, 2026